## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### TAMPA DIVISION

CHARLES D. MAYE

      Petitioner,

v.                                        Case No.  8:07-CV-1258-T-30EAJ
                                            Crim. Case No.  8:04-CR-321-T-30EAJ

UNITED STATES OF AMERICA,

      Respondent.

_____/

## ORDER

      THIS CAUSE comes before the Court upon Charles Maye's (hereinafter referred to as "Maye" or "Petitioner") Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. #8) filed on August 7, 2007, the Government's Response (CV Dkt. #14), and Petitioner's Reply (CV Dkt. #24). The Court concludes that this motion is due to be summarily denied without an evidentiary hearing because it plainly appears from the record that Petitioner is entitled to no relief.

### Background

      On December 16, 2004, a grand jury returned a five-count Superseding Indictment against co-defendants Maye and Leroy Collins (hereinafter referred to as "Collins" or "co-defendant"). The counts pertaining to Maye charged him with the following crimes:

> **Count One:** conspiracy to intentionally access a computer without authorization and in excess of authorization, to obtain information from a department or agency of the United States, for the purpose of private financial gain and in furtherance of criminal acts of extortion in violation of 18 U.S.C. § 1030(a)(2)(B) and knowingly and willfully making materially false

statements to an FBI agent, in violation of 18 U.S.C. § 1001(a)(2), all in violation of 18 U.S.C. § 371;

**Counts Two and Four:** intentionally accessing a computer – the NCIC (National Crime Information Center) computer database – without authorization and in excess of authorization, to obtain information from a department or agency of the United States, for the purpose of private financial gain and in furtherance of criminal acts of extortion in violation 18 U.S.C. § 1030(c)(2)(B)(i) and (ii) and 18 U.S.C. § 2; and

**Count Five:** knowingly and willfully making false statements during an interview with a Special Agent of the FBI, in violation of 18 U.S.C. § 1001(a)(2).

(CR Dkt. #6). The co-defendants requested and received a total of three trial continuances: two by Maye (CR Dkt. #48 and 64) and one by Collins (CR Dkt. #54). Maye also executed three speedy trial waivers (CR Dkt. #60, 65, and 77). Trial commenced on March 27, 2006, and on April 7, 2006, the jury found Maye guilty of all charges (CR Dkt. #152). On July 21, 2007, the Court sentenced Maye to 97 months imprisonment, 36 months of supervised release, and a $15,000 fine. (CR Dkt. #166).  Maye filed a notice of appeal (CR Dkt. #168) which he later voluntarily dismissed (CR Dkt. #177).

Maye now moves to vacate his sentence based on his claim of ineffective assistance of his privately retained counsel. He raises nine grounds in support of his claim, to wit:

**Ground One:** Counsel failed to object to the introduction of prejudicial evidence at trial.

**Ground Two:** Counsel failed to move for dismissal of the Superceding Indictment prior to trial despite the lack of "ends of justice" findings by the Court when granting Maye's requests for continuances.

**Ground Three:** Counsel failed to move for dismissal of the Superceding Indictment even though it "substantially broadened" the original charges.

**Ground Four:** Counsel failed to raise a claim of prosecutorial misconduct.

**Ground Five** Counsel failed to call key defense witnesses to testify.

**Ground Six:** Counsel failed to "flesh out" Government witness Gregory Brown's bias against Maye.

**Ground Seven:** Counsel was ineffective due to the cumulative prejudicial effects of the alleged errors set forth in Grounds 1, 4, 5, and 6.

**Ground Eight:** Maye's claim of "actual innocence" allows the foregoing grounds to be heard in the current Motion despite the failure to raise them on direct appeal.

**Ground Nine:** Counsel was ineffective in advising Maye that he had no appealable issues after trial.


### Facts

Maye met Collins in the early 1990s. Collins was a prominent businessman who owned a mobile home park and would often assist law enforcement. Maye even worked for Collins at the mobile home park as a manager, making repairs and collecting rent. Collins paid Maye for this work and the two had an ongoing financial relationship.

When the two men met, Collins was in the midst of a fifteen-year romantic relationship with Linda Bobo (hereinafter referred to as "Bobo"). That relationship ended in 1996, however, and Bobo began a new relationship with James McLemore (hereinafter referred to as "McLemore"). Several months later, Maye began to access the National Crime Information Center (NCIC) and Florida Crime Information Center (FCIC) databases to

acquire restricted and private information about Bobo–allegedly at Collins' request. Maye also pulled over Bobo's vehicle and gave her a warning for driving without a license, which was then suspended. He also issued her a traffic citation in a subsequent stop.

Maye testified at trial that he accessed the databases as part of an ongoing investigation of alleged drug dealing by Bobo. He claimed that Collins told him about the drug dealing, that Bobo's driver's license was suspended, and that Bobo trafficked her drugs between Bradenton/Sarasota and her home. Maye also claimed that he asked Collins to get McLemore's tag number so that Maye could pass it along to the street crimes unit. Most importantly, Maye testified that he never passed confidential information about Bobo to Collins.

Despite Maye's alleged discretion, Collins still found Bobo's address (which she had been concealing from him) and caused her home to be burglarized. Collins and his cohorts – Willie McCrary (hereinafter referred to as "McCrary") and "Little Willie" – claimed that Maye ran McLemore's tag for them after the three men spotted McLemore's vehicle at the Touch of Class Lounge in Bradenton. Maye apparently provided Collins with McLemore's home address as well, and shortly thereafter Collins, McCrary and "Little Willie" went to that  address and spoke with McLemore's then-estranged wife.

On June 16, 1996, Bobo and McLemore were returning to their home when McLemore was shot and wounded with a shotgun blast in a drive-by shooting. The vehicle described was similar to that owned by Collins at the time. McLemore was taken to Brandon Regional Hospital, which Collins called several days later and spoke to Bobo.  Collins sought

to persuade Bobo to leave McLemore, but Bobo refused. Soon thereafter, Bobo and McLemore moved to a different address.

Between June 17, and September 8, 1996, Maye continued to access the NCIC and FCIC databases concerning Bobo with some frequency. Specifically, he ran searches on Bobo on July 9, 1996; July 12, 1996; July 26, 1996; September 2, 1996; and September 3, 1996. Maye also requested Bobo's official driving record from the Florida Department of Highway Safety and Motor Vehicles.

In September 1996, Collins had dinner with Bobo and threatened harm to McLemore if she refused to leave him. Bobo declined to do so. Collins said that "they'd get him to leave," and told Bobo that "he'll go if I put enough fire up his ass."A few days later, as Bobo and McLemore were again leaving the Touch of Class Lounge, Collins shot McLemore in the head, killing him.

Between September 9, 1996, and November 3, 1996, Collins and Maye again attempted to locate Bobo. Collins and Bobo had a conversation (which was recorded) three days after the murder in which Collins continued to attempt to lure Bobo back into a relationship with him. He also claimed to have access to computer databases.

Some time afterward, Collins told McCrary that Maye was going to put Bobo in jail. Maye later stopped Bobo yet again for driving with a suspended license, but this time placed her under arrest. Collins paid Bobo's bond and attempted to take her from jail. However, Bobo refused to leave with him.

On November 24, 1996, Bobo was leaving the Touch of Class Lounge when a man threw an unidentified caustic substance into her face, blinding her. At trial, the Government claimed that Collins arranged for this tragedy to occur. It also claimed that Maye made false and misleading statements to officials from the Florida Department of Law Enforcement (FDLE) and the Palmetto Police Department (PPD) to cover up his involvement in the conspiracy.

The conspiracy did not end there. In July 1999, Maye also accessed the NCIC and FCIC databases to acquire restricted or private information about another of Collins' former lovers, Angeletta Hill Benavidez Williams (hereinafter referred to as "Hill"). Maye, Collins, and Collins' son even went in person to Hill's home to help Collins take Hill's truck.

On August 6, 2003, Collins accosted yet another former lover, Veronica Smith (hereinafter referred to as "Smith"), at McCrary's residence. Collins attempted to force Smith to disclose her home address, but she refused. A few days later, Maye searched for Smith in the NCIC and FCIC databases to acquire restricted or private information. He attempted to justify the search by claiming that it was in conjunction with an ongoing investigation. However, Government witness Gregory Brown later testified that there was no proof of any such investigation.

## Discussion

### I.   Actual Innocence

The Court will first address Petitioner's contention that a claim of "actual innocence" allows arguments to be heard even if they were not raised on direct appeal. Petitioner is of

course correct that establishing actual innocence occasionally authorizes collateral review of procedurally defaulted claims. <u>Bousley v. U.S.</u>, 523 U.S. 614, 624 (1998) (citing 28 U.S.C.A. § 2255) (Petitioner's claim may still be reviewed in [a] collateral proceeding if he can establish that the constitutional error in his plea colloquy "has probably resulted in the conviction of one who is actually innocent"); <u>House v. Bell</u>, 126 S.Ct. 2064, 2066-67 (2006) (prisoners can assert actual innocence as a "gateway to defaulted claims" in light of new evidence that arises after trial). However, Petitioner must still "demonstrate that, 'in light of all the evidence,' it was more likely than not that no reasonable juror would have convicted him" at trial. <u>See</u> <u>Bousley</u>, 523 U.S. at 623. This standard "ensures that [a] petitioner's case is truly 'extraordinary,' while still providing petitioner a meaningful avenue by which to avoid a manifest injustice." <u>Bell</u>, 126 S.Ct. at 2077 (quoting <u>McCleskey v. Zant</u>, 499 U.S. 467, 494 (1991)).

Here, Petitioner fails to meet the exceptionally high standard for "actual innocence" claims set forth in <u>Bell</u>, 126 S.Ct. 2064. Petitioner bases his claim on the results of a polygraph test conducted after his conviction, contending that this new evidence "proves" his innocence (CV Dkt. #8 at 38-39).

The Court disagrees. Although "the district court is not bound by the rules of admissibility that would govern at trial," and instead should consider "the probative force of relevant evidence that was either excluded or unavailable at trial," <u>Schlup v. Delo</u>, 513 U.S. 298, 327-28 (1995), Petitioner still fails to demonstrate that "no reasonable juror would have convicted him" had the polygraph evidence been available at trial. The Government

presented a formidable case against Petitioner, and the polygraph results (a mere four questions) were not so "truly extraordinary" that no reasonable juror would have disbelieved the evidence that was presented at trial. See id. at 854-58 ("truly extraordinary" evidence presented by death row inmate conclusively proved his innocence of murder charges).

Because Petitioner fails to meet the high standard for "actual innocence" claims, the Court will deny his motion as to this ground.

## II.     Ineffective Assistance of Counsel

Petitioner's primary contention is that he received ineffective assistance of counsel at trial. To succeed on such a claim, Petitioner must show that (1) counsel's performance was deficient due to "errors so serious that counsel was not functioning as the 'counsel' guaranteed [Petitioner] by the Sixth Amendment"; and (2) the deficient performance prejudiced Petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). The failure to raise a meritless claim does not render a counsel's performance deficient. Chandler v. Moore, 240 F.3d 907, 917-18 (11th Cir. 2001) (counsel not ineffective for failing to raise a nonmeritorious issue).

Here, Petitioner bases his claim on eight distinct grounds:

## Ground One

Petitioner first claims that his counsel was ineffective for failing to object to the introduction of prejudicial evidence at trial. Specifically, Petitioner objects to the "introduction of evidence at trial related to the blinding of Linda Bobo and the first and second . . . shooting[s] of James McLemore" even though the charges against him were

essentially computer crimes. The Government responds that "these violent acts were introduced because they were part of the extortion of [Collins' ex-girlfriends] committed by Collins and Maye during the scope of and in furtherance of the conspiracy charged in Count One of the superseding indictment" (CV Dkt. #14).

The Court agrees with the Government's assessment of the evidence. The blinding of Linda Bobo and the shootings of James McLemore were directly relevant to the charges levied against Maye, as 18 U.S.C. § 371(3) requires the government to demonstrate "the commission of an overt act in furtherance of the conspiracy." United States v. Harmas, 974 F.2d 1262, 1267 (11th Cir. 1992) (quoting United States v. Cure, 804 F.2d 625, 628-30 (11th Cir. 1986)). Those acts were also relevant to showing motive, a reason for the conspiracy. Because the evidence was relevant, counsel would not have succeeded in excluding it even if he had objected. Thus, Petitioner's counsel was not deficient in failing to object and Petitioner was not prejudiced..

## Ground Two

Petitioner next contends that his counsel was ineffective for failing to move for dismissal of the Superceding Indictment despite the lack of "ends of justice" findings by the Court when granting Petitioner's requests for continuances. The Court disagrees. Although the Supreme Court recently held that subsection (h)(8)(A) of the Speedy Trial Act "require[s] that [district courts] make express findings on the record about the ends-of-justice balance," Zedner v. U.S., 126 S.Ct. 1976, 1989 (2006), its decision was not handed down until June 5, 2006–nearly two months after Maye was convicted. Case law at that time gave no

indication that any such on-the-record finding was required, especially when the defense itself requests the continuance. See United States v. Brown, 2007 WL 470445, *2 (M.D.Fla. 2007) ("belief that continuances were valid and properly tolled the running of speedy trial . . . [was] a reasonable pre- Zedner assumption"); see also U.S. v. Twitty, 107 F.3d 1482, FN5 (11th Cir. 1997) ("[a]lthough the district court did not cite any reasons for granting these ["ends-of-justice"] requests, the grounds cited in the motions plus the court's grant of a continuance as requested support the inference that the continued delay was to serve the ends of justice"). Because  attorneys cannot be expected to anticipate future changes in the law, see Davis v. Singletary, 119 F.3d 1471, 1476 (11th Cir. 1997), counsel's performance was not deficient because of his failure to do so.

Furthermore, the ends of justice *did* justify granting the continuances. Not only did Petitioner himself request two of the three continuances, and his co-defendant the third, they were granted in order to afford counsel sufficient time to prepare for the fact-intensive trial. In fact, Petitioner's counsel even stated in his first request for a continuance that, "[i]n order to render *effective assistance of counsel* to Mr. Maye, it is *absolutely imperative* that the undersigned understand the intricacies of the data system of the [NCIC] and the [FCIC] and the Hillsborough County Sheriff's Office." Petitioner is disingenuous to now claim that what his counsel did in his best interests was somehow indicative of deficient performance, and the Court denies relief on the second ground.

**Ground Three**

Petitioner's third contention is that his counsel was ineffective for failing to move for dismissal of the Superceding Indictment even though it "substantially broadened" the original charges. Specifically, Petitioner argues that the Superceding Indictment–which broadened the charges in the original Indictment from two substantive offense counts to an eight-year conspiracy–did not afford him sufficient notice of the charges he would face.

The Court disagrees. Petitioner clearly misunderstands the Eleventh Circuit's holding in U.S. v. Ratliff, 245 F.3d 1246 (11th Cir. 2001), in which the Court's key concern was whether a "substantially broadened" superceding indictment filed *after the tolling of the statute of limitations* deprived the defendant of sufficient notice. See id. at 1253. Indeed, the Court noted that:

> Notice to the defendant is the central policy underlying the statutes of limitation. If the allegations and charges are substantially the same in the old and new indictments, the assumption is that the defendant has been placed on notice of the charges against him. That is, he knows that he will be called to account for certain activities and should prepare a defense.

Id. (quoting United States. v. Italiano, 894 F.2d 1280, 1282 (11th Cir. 1990) (holding that "[a] superseding indictment brought *after the statute of limitations has expired* is valid so long as the original indictment is still pending and was timely and the superseding indictment does not broaden or substantially amend the original charges" (emphasis added)).

Here, Ratliff does not apply because the Government brought both indictments within the statute of limitations. Because the Petitioner had sufficient notice to apprise him of the charges against him, the Court denies Petitioner's motion as to this ground.

## Ground Four

Petitioner next claims that his counsel was ineffective for failing to raise a claim of prosecutorial misconduct. In particular, Petitioner alleges that the following acts by the Government were improper:

(A)    Repeated references and testimony relating to murder and violent acts;
(B)    The introduction of a taped conversation between Bobo and Collins;
(C)    Allegations regarding Maye's attempts to locate Bobo's address for Collins on certain dates; and
(D)    Allegations regarding Maye's attempts to locate Hill's address for Collins.

For reasons set forth below, the Court disagrees with each allegation.

As to subsection (A), the Court previously noted in responding to Ground One that references and testimony relating to murder and violent acts were relevant to the charges brought against Petitioner. The Government did not introduce such evidence solely to inflame the passions of the jury.

As to subsection (B), the Court finds that it was not misled by the Government when it admitted the taped conversation between Collins and Bobo. Petitioner claims that the Government committed misconduct when it promised "McCrary would testify that Collins had Maye run the 'rap sheet' of James McLemore in order to 'follow up' on McLemore's shooting" (CV Dkt. #8), but then McCrary never did. However, McCrary did testify that (1) Collins provided Maye with McLemore's tag number; (2) Maye provided Collins with McLemore's home address; and (3) a week later, he, Collins, and "Little Willie" accosted

McLemore's wife at that address. <u>See</u> Transcript of Record at 50-54 (March 29, 2006). The Court finds no misconduct regarding the tape's introduction.

As to subsection (C), the Superceding Indictment alleges that Petitioner attempted to locate Bobo *between* June 17, 1996, and September 8, 1996, not on those dates in particular. After all, the Government was more concerned with demonstrating an ongoing conspiracy than a few independent acts. Thus, Petitioner's claim that he could not possibly have attempted to locate Bobo on those exact dates misses the point.

Finally, as to subsection (D), Petitioner's claim that he ran Hill's tag for law enforcement purposes was for the jury to believe or disbelieve. Petitioner contends that he ran the tag because he observed "a strange vehicle, unknown to [him]" at the mobile home park that he managed. However, Collins testified that Petitioner ran the tag at his request. Thus, the Government clearly did not "know" that its claim was false.

Because Petitioner's prosecutorial misconduct claims are meritless, his counsel was not ineffective for failing to raise them at trial. The Court denies relief as to the fourth Ground.

**<u>Ground Five</u>**

Petitioner's fifth contention is that his counsel was ineffective for failing to call key defense witnesses to testify. However, the failure to call particular witnesses which the Petitioner thinks would be helpful is generally not considered ineffective assistance of counsel. <u>See</u> <u>Hardwick v. Crosby</u>, 320 F. 3d 1127, 1161 (11th Cir. 2003). Calling witnesses is a strategic choice, <u>Conklin v. Schofield</u>, 366 F. 3d 1191, 1204 (11th Cir. 2004), which

courts usually avoid second-guessing. See generally Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) (trial strategy only amounts to ineffective assistance of counsel "if it was so patently unreasonable that no competent attorney would have chosen it").

Additionally, Petitioner fails to meet his burden of proving *objectively deficient* performance, see generally United States v. Cronic, 466 U.S. 648, 658 (1984), let alone resulting prejudice. After all, Petitioner (1) never gave the names of the alleged witnesses to his counsel; (2) provided no statements from those witnesses indicating that they would corroborate his claims; (3) still presented witnesses at trial and had the opportunity to cross-examine government witnesses; and (4) testified himself *at length* in his own defense. His claims of would-be testimony are inconcrete and self-serving, and do not provide the Court with a reasonably objective basis to judge their merits. Because counsel presented a thorough defense, the Court will not engage in an *ex post facto* questioning of his strategy.

## Ground Six

Petitioner next alleges that his counsel was ineffective for failing to "flesh out" Government witness Gregory Brown's bias against him. Indeed, Petitioner's counsel confined his questioning of Brown to changes made to the police databases over the years. See Transcript of Record at 18-20 (March 31, 2006). Nevertheless, the Court refuses to second guess his counsel's tactical decisions in cross-examination. See Strickland, 466 U.S. at 689-90 ("counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy"). Cross-examination is an art, not a science, and counsel could have reasonably concluded that

accusing the witness (a Colonel in the police force, no less) of impropriety would prejudice Petitioner.

Thus, the Court declines to grant Petitioner's motion as to this ground.

## Ground Seven

Petitioner's seventh contention is that his counsel was ineffective due to the cumulative prejudicial effects of the alleged errors set forth in Grounds 1, 4, 5, and 6. The Court again disagrees. Grounds 1,4,5, and 6 are meritless when considered separately, and do not gain credibility simply because Petitioner now groups them together. Thus, Petitioner has no claim for relief under the "cumulative prejudicial effects" rationale.

## Ground Nine

Petitioner's final claim is that his counsel was ineffective in advising that there were no appealable issues after trial. Petitioner contends that there were actually three such issues: (1) Government's prejudicial references to violent acts (Ground 4(A)); (2) admission of the audio tape (Ground 4(B)); and (3) prosecutorial misconduct (Ground 4 generally). The Government again counters that the claims are meritless.

The Court agrees with the Government. Even assuming Petitioner's allegation regarding his counsel to be true, his counsel acted reasonably in dissuading Petitioner from raising meritless claims on appeal. Because raising these issues (which the Court rejected under Ground Four) would not have altered Petitioner's fortunes, Petitioner again fails to demonstrate any deficiency of counsel or resulting prejudice. Thus, the Court declines to grant Petitioner's motion as to this final ground.

It is therefore ORDERED AND ADJUDGED that:

1.      Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. #8) is DENIED.

2.      The Clerk is to enter judgment for Respondent, United States of America, terminate any pending motions, and close this case.

3.      The Clerk is directed to terminate the pending Motion to Vacate, Set Aside, or Correct Sentence (CR Dkt. #206) in the corresponding criminal case 8:04-cr-321-T-30EAJ.

        **DONE** and **ORDERED** in Tampa, Florida on February 13, 2008.


_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE


**Copies furnished to:**
Counsel/Parties of Record

F:\Docs\2007\07-cv-1258.deny 2255.wpd